USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/20/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA, | 10 Cr. 553 (SHS) |
|---|---|
| -against- | MEMORANDUM OPINION & ORDER |
| MONDHER BEJAOUI, Defendant. | |

SIDNEY H. STEIN, U.S. District Judge.

On March 14, 2013, this Court received a March 5, 2013 letter from defendant Mondher Bejaoui requesting that the Court relieve his counsel, Joshua Dratel, Esq. and appoint another. (Dkt. No. 105.) Dratel is the third attorney defendant has had in this litigation. Bejaoui claims that his relationship with Dratel has broken down because of a "total lack of communication and professional misconduct" on Dratel's part, including not sending drafts of motions to defendant and apparently stipulating to the authenticity of certain business records. (Def.'s Mot. at 1-2.) Because the Court has twice previously granted defendant's requests to change counsel, because defendant's trial is scheduled to begin in less than three weeks, and because defendant has a record of manipulative behavior in this litigation, the Court denies Bejaoui's motion.

In considering a defendant's request for new counsel, this Court takes into account the timeliness of the motion, "whether the conflict between the defendant and his attorney was so great that it resulted in a total lack

1

of communication preventing an adequate defense," and the extent to which the defendant's own conduct was the cause of any breakdown in communication. *United States v. John Doe I*, 272 F.3d 116, 122-23 (2d Cir. 2001). When a case is approaching trial and the court "has already replaced counsel more than once," and a defendant has proven "intractable," the trial court "may require a defendant to proceed to trial with counsel not of the defendant's choosing." *United States v. Culbertson*, 670 F.3d 183, 192-93 (2d Cir. 2012) (quotation marks and citations omitted). All of these factors are present here.

As noted above, this Court has granted prior requests by defendant to replace his court-appointed attorneys. At the outset of this case, at the end of June 2010, Steven Kartagener, Esq. was appointed to represent Bejaoui pursuant to the Criminal Justice Act. (Dkt. No. 9.) Defendant made his first request for new counsel a mere two-and-one-half months later. During a September 17, 2010 hearing, Bejaoui explained that his request for new counsel was based on the fact that Kartagener had not filed a number of motions that Bejaoui had insisted be filed. For his part, Kartagener correctly believed he had an obligation not to file "frivolous" motions that had "no real possibility of success." (Hr'g Tr. dated Sept. 17, 2010 at 9-10.)

Nonetheless, the Court granted Bejaoui's application for a new attorney and appointed Jean Barrett, Esq. in place of Kartagener. (Order dated Sept. 23, 2010; Dkt. No. 8.) Approximately three months later, in a December 22, 2010 letter to the Court, Barrett explained that a breakdown in communication had occurred between her and Bejaoui and that Bejaoui had requested the appointment of new counsel. (Dkt. No. 26.) Barrett

explained that she had conferred with Bejaoui for "almost ten hours" over the course of two days, during which time their exchanges became "increasingly unproductive" and ended with Bejaoui "hurling accusations of incompetence" at Barrett and asking to have her replaced. (Hr'g Tr. dated Dec. 23, 2010 at 11.)

The Court once again granted defendant's request and appointed Joshua Dratel to represent him. (Order dated Dec. 23, 2010; Dkt. No. 23.) During the December 23, 2010 hearing at which the Court appointed Dratel, the Court explained that it would "be surprised if [it] were to grant [Bejaoui] another attorney, because each of the prior two attorneys [defendant] had problems with . . . are experienced criminal defense attorneys . . . [who] had difficulty working with [Bejaoui]." (Hr'g Tr. dated Dec. 23, 2010 at 12-13.) The Court then explicitly stated: "Mr. Dratel is going to be [Bejaoui's] last attorney unless there are very unusual circumstances." (*Id.* at 13.)

Soon thereafter, beginning in January 2011, questions arose concerning defendant's competency to stand trial. Defendant's behavior had changed dramatically from active participation in his defense—including vigorous and heated discussions between defendant and his attorney during the course of court conferences—to either refusing to or being unable to assist counsel in his defense.

After ordering Bejaoui to undergo extensive psychological evaluations, appointing both defense and government experts, and conducting a two-day fact hearing on the issue of Bejaoui's competency to stand trial, the Court concluded in October 2012 that Bejaoui was

"competent to stand trial, [could] understand the nature and consequences of the proceeding against him, and [had] the ability to assist properly in his defense." (Hr'g Tr. dated Oct. 3, 2012 at 2; Dkt. No. 65.) Significantly, after hearing the testimony of a defense psychiatrist and a government psychologist, the Court found that Bejaoui "does understand the proceedings but is unwilling to assist his attorneys" and that, based on the evidence adduced at the hearing, "the defendant himself considers his noncooperative behavior to be a method of influencing his attorneys." (*Id.* at 7, 15.) Shortly after that determination, the defendant, whose affect at the competency hearing was described as "almost catatonic," (*id.* at 8) became once again actively involved in his defense, at least while in court conferences, conferring frequently and animatedly with his counsel.

In November 2012, Bejaoui again expressed dissatisfaction with his legal representation. First, during a November 8, 2012 hearing, defendant indicated that he desired new counsel. (Hr'g Tr. dated Nov. 8, 2012 at 5.) Explaining that any new attorney "would be the fourth set of lawyers for Mr. Bejaoui" and finding that Bejaoui had not stated any basis for his request for new counsel, the Court denied it. (*Id.* at 5-6.) A few weeks later, Bejaoui made an application to represent himself at trial. (Hr'g Tr. dated Nov. 27, 2012 at 2.) The Court held a hearing and, after describing to defendant his right of self-representation and extensive questioning about his understanding of the advantages and disadvantages of self-representation, the Court found that Bejaoui's request was knowing, voluntary and explicit and that defendant was competent to proceed pro se. (*Id.* at 24-25.) After making this determination, the Court appointed

Dratel as standby counsel and adjourned the trial, which had been set to begin on December 12, 2012, to January 16, 2013, at Bejaoui's request. (*Id.* at 22-23.)

The very day before trial was scheduled to begin, Dratel submitted a letter to the Court on behalf of Bejaoui indicating, inter alia, that Bejaoui was "uncertain whether he want[ed] to continue to represent himself at trial." (Dkt. No. 88.) On January 16, the scheduled trial date, after the venire had been called to court and were assembled to come to the appropriate courtroom, Bejaoui decided to waive his right to represent himself. The Court accepted Bejaoui's decision and reappointed Dratel as his attorney. (Hr'g Tr. dated Jan. 16, 2013 at 44.) Prior to appointing Dratel, the Court explicitly told defendant: "If you decide that you want Mr. Dratel to represent you, . . . [y]ou will not be able to change your mind. You will not get another lawyer. You've had three lawyers already. . . . [T]here were conflicts in the representation, [and] you didn't want [the previous lawyers] because they wouldn't agree with what you wanted. . . . To some extent, sir, I believe you tend to manipulate the legal system to your end. Mr. Dratel will be your lawyer." (*Id.* at 29-30.) Defendant stated on the record that he understood. (*Id.* at 31.)

After Bejaoui specifically chose, in open court on January 16, 2013, to be represented by Dratel rather than proceed pro se, the Court adjourned the trial until April 1 in order to permit defense counsel to prepare for trial. On March 8, 2013, the trial was adjourned sua sponte an additional week due to the Court's schedule and is currently scheduled to begin on April 8, 2013.

5

At this late date, less than three weeks before the already twice adjourned trial date and nearly three years since the commencement of this action, Bejaoui seeks yet another removal of his attorney. In light of the record—which demonstrates defendant's contentious and dilatory behavior and the Court's repeated warnings that any additional request to change counsel would not be granted—defendant's motion to relieve Dratel as his counsel is denied.

Dated: New York, New York
March 20, 2013

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.